UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

FRANK NALI,

    Plaintiff,

v.                                          Case No. 2:07-cv-87
                                                HON. ROBERT HOLMES BELL

J. EKMAN, et al.,

    Defendants.
_____/

**REPORT AND RECOMMENDATION**

        Plaintiff Frank Nali, a former inmate at the Ojibway Correctional Facility, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Nurse J. Ekman, Hearing Officer Unknown O'Brien, Investigating Officer P. Yon, Sergeant Unknown Buda, B. Flahaug, Officer Unknown Pispanen[1], and Officer Unknown Kellett.

        Plaintiff's complaint alleges that on April 9, 2007, Defendant Ekman wrote a false major misconduct ticket on Plaintiff for insolence. Plaintiff claims that this ticket was motivated by a desire to retaliate against Plaintiff for his prior letters of complaint to both Defendant Ekman and to health care, in which he asserted that Defendant Ekman was incompetent, lacked knowledge and experience, and indicated that he did not wish to be treated by her. Defendant Yon failed to investigate as requested by Plaintiff and Defendant O'Brien found Plaintiff guilty without any factual support for the finding. Plaintiff also states that he was denied the opportunity to present material essential to his defense. According to Plaintiff, Defendant Buda improperly reviewed the guilty finding.

---

    [1]Also known as Piispanen.

Plaintiff further alleges that on March 21, 2007, Defendant Flahaug issued an out of place ticket to Plaintiff for being in the dining room without authorization. Plaintiff states that he did in fact have such authorization. Plaintiff asserts that when he entered the chow hall and began his breakfast, Defendant Buda sent Defendant Flahaug to Plaintiff's table to accost him. However, Defendant Flahaug did not know who Plaintiff was and escorted the wrong prisoner from the table. Defendant Buda then sent Defendant Flahaug back to the table to get Plaintiff. Defendant Buda then advised Defendant Flahaug to write the ticket on Plaintiff. Plaintiff claims that Defendants Yon and O'Brien failed to allow Plaintiff to use the chow line roll call sheet to show that Plaintiff was authorized to be in the dining hall during the pertinent time period. In addition, Plaintiff states that Defendant Yon failed to investigate the ticket and that Defendant O'Brien upheld the ticket without sufficient evidence.

Plaintiff states that Defendants' conduct was retaliatory and violated Plaintiff's due process and equal protection rights. In addition, Plaintiff states that Defendants were negligent and subjected him to harassment and intentional infliction of emotional distress. Plaintiff seeks compensatory and punitive damages. In addition, Plaintiff seeks injunctive relief prohibiting Defendants from retaliating against Plaintiff for filing this lawsuit.

Plaintiff's complaint was initially dismissed by the court on November 15, 2007, for failing to state a claim. Plaintiff filed an appeal and on December 9, 2009, the United States Court of Appeals for the Sixth Circuit affirmed the dismissal in part, but remanded Plaintiff's First Amendment retaliation claims against Defendants Buda and Flahaug, as well as Plaintiff's state law claims to the extent that the court wished to exercise pendent jurisdiction over those claims. (Docket #22.)

Presently before the Court are the Defendants' Motions to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), and/or for Summary Judgment, pursuant to Fed. R. Civ. P. 56. Plaintiff has filed a response and the matter is ready for decision. Because both sides have asked that the Court consider evidentiary materials beyond the pleadings, the standards applicable to summary judgment apply. *See* Fed. R. Civ. P. 12(b).

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

In their motion for summary judgment, Defendants Yon, Buda, Byron, Flohaug[2], Pispanen, and Kellett assert that Plaintiff failed to exhaust his administrative remedies against Defendants Ekman, Flohaug, and Pispanen for issuing an allegedly retaliatory misconduct ticket. Pursuant to the applicable portion of the Prison Litigation Reform Act (PRLA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 127 S. Ct. 910, 922-23 (2007); *Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 127 S. Ct. at 922-23.

MDOC Policy Directive 03.02.130 (effective July 9, 2007) sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶ P. The

---

[2]Listed on the complaint as "Flahaug."

Policy Directive also provides the following directions for completing grievance forms: "The issues shall be stated briefly. Information provided shall be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original). The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ X.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶¶ T, DD. The respondent at Step II is designated by the policy, *e.g.*, the regional health administrator for a medical care grievances. *Id.* at ¶ GG. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III. *Id.* at ¶ FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ X. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved . . . ." *Id* at ¶ HH.

Defendants note that although Plaintiff filed a request for rehearing pursuant to MCL 791.254, he did not file a grievance against Defendants Ekman, Flohaug, and Pispanen asserting that they acted with a retaliatory motive, as he was entitled to do pursuant to Policy Directive 03.02.130 (E), (F) and (K). Nor did Plaintiff file a grievance against Defendant Buda for encouraging the

retaliatory charges, or against Defendant Yon for failing to properly investigate the ticket in retaliation. In support of their motion for summary judgment, Defendants offer the affidavit of Richard Stapleton, Administrator for the Office of Legal Affairs for the MDOC, which reveals that Plaintiff did not file and exhaust any grievances during the relevant time frame which asserted a retaliation claim against Defendants Ekman, Flohaug, Pispanen, Buda, Yon, or O'Brien. Defendants also offer a copy of Policy Directive 03.02.130 and copies of the grievances that Plaintiff appealed to step III during the pertinent time period.

In response to this assertion, Plaintiff states that he exhausted his retaliation claims by requesting a rehearing of his misconduct. Plaintiff attached to his complaint copies of the misconduct hearing records for misconduct tickets written on Plaintiff by Defendants Ekman, Flohaug, and Pispanen in March and April of 2007. (Plaintiff's Exhibits A, B, and C.) However, as noted by Defendants, Plaintiff's misconduct appeals did not exhaust his retaliation claims. Because the record shows that Plaintiff did not exhaust his retaliation claims against any of the named Defendants, these claims are properly dismissed.

Defendants further contend that even if Plaintiff had exhausted his retaliation claims, the record shows that Defendants' conduct was not motivated by a desire to retaliate against Plaintiff. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's

alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

With regard to the ticket written by Defendant Pispanen, the major misconduct was written for being out of place when Plaintiff was in the chow hall. Plaintiff asserts that Defendant Kellett signed his itinerary, authorizing Plaintiff to be in the chow hall at 11:50 a.m. when the ticket was written by Defendant Pispanen. Defendants refer to a copy of the "Offender Daily Schedule," which Plaintiff attached to his complaint as part of Exhibit C. Defendants note that Defendant Kellett did not authorize Plaintiff to be in the chow hall, but only to go to his health care callout at 12:10 p.m. (Plaintiff's Exhibit C, p. 2.) Moreover, in his affidavit, Defendant Kellett attests that he did not give Plaintiff verbal permission to go to early chow. (Defendants' Exhibit 3, ¶¶ 4-5.) Plaintiff asserts that the ticket was eventually dismissed because of a "discrepancy in the information provided by the defendants." However, Plaintiff fails to explain the specifics of the asserted discrepancy, or to offer any documentation regarding the dismissal. Defendants state that the facility copy of the major misconduct records for that period is no longer available, as the retention period has elapsed.

Defendants state that the mere fact that the ticket was dismissed at some point does not establish that it was written with a retaliatory motive. Defendant Pispanen attests that he wrote the out of place ticket on Plaintiff because his itinerary, which was signed by Defendant Kellett, only allowed Plaintiff to go for his mandatory health care callout. The callout was scheduled for 12:10 to 12:20 p.m. and specifically required Plaintiff to get the itinerary signed by the officer 5 minutes prior to his scheduled callout in order to be valid. (Defendants' Exhibit 2, ¶¶ 4-5, Plaintiff's Exhibit C.) Defendant Kellett told Defendant Pispanen that he signed Plaintiff's itinerary only to go to health care, not to go to chow hall. When Plaintiff was in the chow hall, he was not authorized to

be there by the itinerary. (Defendants' Exhibit 2, ¶¶ 6-9.) For the above stated reasons, Plaintiff's retaliation claim regarding the ticket written by Defendant Pispanen for being out of place lacks merit.

With regard to the March 21, 2007, misconduct ticket written by Defendant Flohaug, Plaintiff claims that Defendant Buda encouraged Defendant Flohaug to write the ticket because Plaintiff had written a grievance on him. The grievance that Plaintiff wrote on Defendant Buda, No. OCF-07-03-00416, states that on March 19, 2007, Plaintiff went to the chow hall and asked Defendant Buda if he could have chow at that time. The grievance states that instead of responding to his question, Defendant Buda asked Plaintiff about his medical condition, which Plaintiff felt was inappropriate. (Defendants' Exhibit 1-C.) On March 21, 2007, Defendant Flohaug wrote a ticket on Plaintiff for being in the chow hall without authorization at 8:01 a.m. (Plaintiff's Exhibit B.) Because Plaintiff was not authorized to be in the chow hall at that time, Defendant Flohaug had a non-retaliatory reason for writing the ticket. In addition, Defendant Flohaug attests that he was not aware of Plaintiff's grievance against Defendant Buda at the time he wrote the misconduct ticket. (Defendants' Exhibit 5, ¶ 6.) Therefore, Plaintiff's claim that this ticket was retaliatory lacks merit.

With regard to the April 9, 2007, misconduct ticket written by Defendant Ekman, Plaintiff claims that the ticket was "facially invalid," that Defendant Yon failed to properly investigate the ticket, and that Defendant O'Brien found Plaintiff guilty because of her own personal bias. Plaintiff also claims that Defendant Buda failed to state the specific rule violation when he reviewed the ticket with Plaintiff. A review of the record indicates that Defendant Ekman wrote the ticket on Plaintiff for insolence after Plaintiff wrote to Dr. Rocco and called Ekman a "wanna-be," and stated that Ekman was incompetent. (Plaintiff's Exhibit A, p. 1.) In the reason for the guilty finding, Defendant O'Brien stated that Plaintiff had sent the letter, and that the statements contained

in the letter were intended to harass and degrade Defendant Ekman. In addition, Defendant O'Brien found that Plaintiff knew that Defendant Ekman would discover the statements because the letter would be placed in his health care file, where Defendant Ekman would see it. Defendant O'Brien found that Plaintiff's defenses were irrelevant to the charge and concluded that Plaintiff was guilty of insolence. (Plaintiff's Exhibit A, p. 6.) The decision was upheld at the Request for Rehearing. (Defendants' Exhibit 4.) A review of the record fails to reveal any evidence that this ticket was motivated by a desire to retaliate against Plaintiff.

With regard to the misconduct tickets discussed above, Plaintiff appears to be claiming that temporal proximity alone is sufficient to support his retaliation claims. Temporal proximity may be "'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004).

Moreover, *Muhammad* does not stand for the proposition that temporal proximity alone is sufficient to create an issue of fact as to retaliatory motive.

> In *Muhammad* the Sixth Circuit did not resolve the issue, but merely observed that "temporal proximity alone **may be** 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.' " Id. at 418 (quoting DiCarlo v. Potter, 358 F.3d 408, 422 (6th Cir.2004) (emphasis added). Even if temporal proximity may in some cases create an issue of fact as to retaliatory motive, it would only be sufficient if the evidence was "significant enough." Plaintiff's conclusory and ambiguous evidence is not "significant enough" to create an issue of fact as to retaliatory motive.

*Brandon v. Bergh*, 2010 WL 188731, slip op. at 1 (W.D. Mich., Jan. 16, 2010).

A defendant's statements or conduct are not evidence of retaliation if the defendant is not the decisionmaker taking the alleged adverse action. *Smith v. Campbell*, 250 F.3d 1032, 1038 (6th Cir. 2001); *Shehee v. Luttrell*, 199 F.3d 295, 301 (6th Cir. 1999). In this case, Plaintiff fails to offer any significant evidence in support of his assertion that the Defendants' conduct was retaliatory. Therefore, Plaintiff's retaliation claims against Defendants Ekman, Yon, Buda, Byron, Flohaug, Pispanen, and Kellett are properly dismissed.

Defendants Ekman, Yon, Buda, Byron, Flohaug, Pispanen, and Kellett also assert qualified immunity. Defendants alternatively move for qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard

to sequence. *Id*. As previously discussed, because Plaintiff cannot establish that his constitutional rights were violated, Defendants are entitled to qualified immunity.

Finally, Defendants claim that if the court grants summary judgment to them as to Plaintiff's retaliation claims, they are also entitled to dismissal of Plaintiff's state law claims. Defendants are correct. Pendent jurisdiction over state law claims cannot be exercised after all federal claims have been dismissed. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726-727, 86 S. Ct. 1130, 1139 (1966); *Moon v. Harrison Piping Supply, et al.*, 465 F.3d 719, 728 (6th Cir. 2006); *Smith v. Freland*, 954 F.2d 343, 348 (6th Cir.), *cert. denied*, 504 U.S. 915, 112 S. Ct. 1954 (1992). Therefore, should the court adopt the report and recommendation in this case, Plaintiff's state claim claims are properly dismissed.

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to Defendants' motions for summary judgment. Accordingly, it is recommended that Defendants' Motions for Dismissal and/or Summary Judgment (docket #34, #46, and #49) be granted and that this case be dismissed in its entirety.

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the undersigned recommends granting Defendants' motion for summary judgment, the undersigned discerns no good-faith basis for an appeal. Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $455 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455 appellate filing fee in one lump sum.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within 14 days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

      /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: January 31, 2011